THE ROGERS PARK WATER COMPANY

*v.*

JOHN B. FERGUS.

</div>

*Opinion filed February 17, 1899—Rehearing denied April 6, 1899.*

1. CORPORATIONS—*a water company is subject to legislative regulation as to rates.* A corporation organized under the general law and authorized by a city to construct water-works and supply the public with water is a *quasi* public corporation, and as such is subject to legislative restriction and regulation as to rates.

2. MUNICIPAL CORPORATIONS—*city's power to regulate water rates is a continuing one.* The power of a municipal corporation, under section 1 of article 10 of the City and Village act, (Rev. Stat. 1874, p. 240,) to fix water rates is a continuing one, which may be exercised from time to time, as changed conditions may affect the reasonableness of rates formerly established.

3. SAME—*ordinance fixing water rates for thirty years not a contract.* An ordinance granting a corporation the right to use public streets for thirty years for a water-works system and fixing the rates to be charged for that period is merely a declaration that such rates are reasonable, and is not a contract which binds the city to recognize such rates as reasonable for the full period.

4. SAME—*annexation clothes council with power to reduce water rates in annexed territory.* Annexation of a village by a city clothes the council with power to reduce water rates of a corporation, which

is operating a water system in the annexed territory under an ordinance fixing the rates for thirty years, to conform to the rates in other parts of the city, and if such rates are reasonable the corporation must abide by them.

5. CONTRACTS—*one taking water does not contract to pay present rates regardless of reduction by city.* An application for water by an inhabitant of a city, and its acceptance by the water company, merely binds the inhabitant to pay the rates then in existence as long as the company has the right to demand them, and upon their reduction by the city the inhabitant may by *mandamus* compel the company to furnish water at the reduced rates if they are reasonable.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

PARTRIDGE & PARTRIDGE, (NEWTON A. PARTRIDGE, of counsel,) for appellant:

The village of Rogers Park had the right to contract with appellant for a supply of water for public use, under "An act to enable cities and villages to contract for a supply of water for public use and to levy and collect a tax to pay for water so supplied." Rev. Stat. 1874, p. 252.

This statute was amended June 26, 1885, to include incorporated towns besides cities and villages, and was extended to cover contracts with persons as well as with incorporated companies. Starr & Curtis' Stat. (2d ed.) p. 865; 1 Dillon on Mun. Corp. sec. 46; *Gas Co.* v. *Light Co.* 115 U. S. 650; *Gas Co.* v. *Gas Co.* id. 683; *Water-Works Co.* v. *Rivers,* id. 674; *Quincy* v. *Bull,* 106 Ill. 337; *Wagner* v. *Rock Island,* 146 id. 139; *Bank* v. *Arkansas City,* 76 Fed. Rep. 271.

Where the grantee of a franchise has accepted the grant and performed the public service imposed as a condition of the grant the franchise becomes a contract, which is protected by the constitutional provisions which forbid the passage of any law impairing the obligation of contracts. 2 Dillon on Mun. Corp. sec. 691; *Gas Co.* v. *Light Co.* 115 U. S. 650; *Water-Works Co.* v. *Rivers,* id. 674; *Gas Co.* v. *Gas Co.* id. 683; *Water-Works Co.* v. *Water-Works Co.* 14 Fed. Rep. 194; *Railroad Co.* v. *Pennsylvania,* 153 U. S. 626; *Reagan* v. *Farmers' Co.* 154 id. 362.

Even a mere license, if acted upon in so substantial a manner that to revoke it would be unjust, ceases to be a license and becomes a valid contract. *Gregsten* v. *Chicago*, 145 Ill. 451; *Belleville* v. *Railway Co.* 152 id. 171.

A legislative grant becomes a contract, and irrevocable after acceptance. *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *People* v. *O'Brien*, 111 N. Y. 1; *Fletcher* v. *Peck*, 6 Cranch, 87; *Von Hoffman* v. *Quincy*, 71 U. S. 535; 1 Dillon on Mun. Corp. sec. 53.

Municipal grants and ordinances are subject to the same constitutional prohibitions as are other legislative grants. *Williams* v. *Bruffy*, 96 U. S. 176; *Water-Works Co.* v. *Sugar Co.* 125 id. 18; *Water-Works Co.* v. *Rivers*, 115 id. 674; *Water-Works Co.* v. *Water-Works Co.* 120 id. 64; 6 Am. & Eng. Ency. of Law, (2d ed.) 1080; *Von Hoffman* v. *Quincy*, 71 U. S. 535; 4 Thompson on Corp. secs. 5427, 5428, 1019.

The constitutional prohibitions forbid any impairment whatever of the obligation of contracts. *Rich* v. *Chicago*, 59 Ill. 286; *Gebhardt* v. *Reeves*, 75 id. 301; *Helm* v. *Webster*, 85 id. 116; *Dartmouth College* v. *Woodward*, 4 Wheat. 514; *Bronson* v. *Kinzie*, 1 How. 319; *McCracken* v. *Hayward*, 2 id. 608; *Von Hoffman* v. *Quincy*, 71 U. S. 535; *Gas Co.* v. *Gas Co.* 115 id. 683; *Water-Works Co.* v. *Rivers*, 115 id. 674; *Fisher* v. *Green*, 142 Ill. 80; *Woods* v. *Soucy*, 166 id. 407; *Kinney* v. *Sherman*, 14 id. 520; *Railroad Co.* v. *Goodwin*, 94 id. 262.

The expediency of measures and the reasonableness of rates are legislative questions, and when these rates are fixed before the acceptance of the franchise by the charter or ordinance they become part of the contract and are protected by the constitution. *Munn* v. *Illinois*, 94 U. S. 113; *Ruggles* v. *Illinois*, 108 id. 536; 91 Ill. 256; *Dow* v. *Beidelman*, 125 U. S. 680; *Railroad Co.* v. *Iowa*, 94 id. 183; *Wabash, etc. Co.* v. *Illinois*, 118 id. 557; *Budd* v. *New York*, 143 id. 517; *Water-Works* v. *Schottler*, 110 id. 347; *Brass* v. *North Dakota*, 153 id. 391.

The police power does not include any right to divest property rights or to impair the obligation of contracts.

It relates to the health, safety, welfare and morals of the community. *Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Fertilizer Co.* v. *Hyde Park,* id. 659; *Lake View* v. *Cemetery Co.* 70 Ill. 191; *Railway Co.* v. *Jacksonville,* 67 id. 37; *Water-Works Co.* v. *Rivers,* 115 U. S. 674; *Gas Co.* v. *Light Co.* id. 650; *Eden* v. *People,* 161 Ill. 296; *Ritchie* v. *People,* 155 id. 98.

JESSE B. BARTON, for appellee:

A municipal corporation has no power except as expressly granted or necessarily implied from the powers granted. *Alton* v. *Insurance Co.* 82 Ill. 45; *Agnew* v. *Brall,* 124 id. 312; *Smith* v. *McDowell,* 148 id. 51.

A person or private corporation claiming a special privilege, the subject of legislative grant, is held to the strictest account as to his or its authority. *Jackson Co. H. R. Co.* v. *Inlustan R. T. Co.* 20 Fed. Rep. 306.

Section 14 of article 11 of the constitution of 1870 prohibits the irrevocable grant of the special privilege of maintaining a fixed schedule of rates and charges for water to be paid by private consumers. *Indianapolis Street Car Co.* case, 166 U. S. 562; *Wagner* v. *Rock Island,* 146 Ill. 139; *Crumley* v. *Water Co.* 41 S. W. Rep. 1058; *Lumbard* v. *Stearns,* 4 Cush. 60; *Wheeler* v. *Irrigation Co.* 10 Colo. 582; *Hangen* v. *Water Co.* 14 L. R. A. 424; *People* v. *Water Co.* 56 Hun, 76; *Water-Works* v. *Schottler,* 110 U. S. 347; *Smythe* v. *Ames,* 169 id. 466.

The General Assembly, aside from any express constitutional limitation, has no power, either directly or through authority which it vests in its municipalities, to irrevocably establish a schedule of water rates and charges to be paid by private consumers during any specified period. *Ruggles* v. *People,* 91 Ill. 256; *Smythe* v. *Ames,* 169 U. S. 466; Cooley's Const. Lim. (6th ed.) 146, 343, 349; *East St. Louis* v. *Gas Light Co.* 98 Ill. 415; *Millikin* v. *Edgar County,* 142 id. 528; *Carlyle* v. *Water Co.* 52 Ill. App. 577.

The General Assembly, by section 1, article 10, chapter 24, of the Revised Statutes, did not empower the vil-

lage board to irrevocably establish a schedule of water rates and charges to be paid by private consumers. *Railroad Co.* v. *People*, 95 Ill. 313; *Ruggles* v. *People*, 91 id. 256.

The appellant is subject to any regulation or provision that the General Assembly may at any time deem advisable to prescribe. *Ford* v. *Milk Shippers' Ass.* 155 Ill. 166; *Pennsylvania Coll. cases*, 13 Wall. 190; *Shields* v. *Ohio*, 95 U. S. 319; *Miller* v. *N. G.* 15 Wall. 478; *State* v. *Railroad Tax. Com.* 37 N. J. L. 228; *Greenwood* v. *Freight Co.* 105 U. S. 13; *Water-Works* v. *Schottler*, 110 id. 347; *Inland Fisheries* v. *Water Power Co.* 104 Mass. 446; 15 Wall. 500; *Railroad Co.* v. *Sioux City*, 138 U. S. 98.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The village of Rogers Park, in Cook county, was organized under the general act providing for the incorporation of cities and villages. On the 4th day of April, 1893, the village was annexed to and became a part of the city of Chicago. The appellant company is a corporation organized under the general statute providing for the formation of corporations, the object for which it was incorporated being "to locate, construct and operate a system of water-works in the village of Rogers Park." On the 4th day of October, 1897, the city council of the city of Chicago passed an ordinance fixing the maximum rates to be charged for water furnished to the inhabitants of that part of the territory of the said city which had formerly composed the village of Rogers Park, making water rates in such territory uniform with the rates provided by other ordinances to be paid in other portions of the city. The appellee, who occupied premises situate within the former limits of the said village of Rogers Park, which premises were supplied with water from the water mains of the appellant company, filed this a petition for a writ of *mandamus* to require the appellant company to furnish water at the rates fixed by the said ordinance of the city of Chicago. The appellant company pleaded the

village of Rogers Park, prior to the annexation thereof to the city of Chicago, on November 12, 1888, adopted an ordinance granting to it the exclusive right of laying pipes and mains and other conduits in the streets, alleys and public places in the said village, for the purpose of furnishing and conducting an adequate supply of water to said village and the inhabitants thereof for public and private use for and during the period of thirty years, and by the same ordinance fixed the rates to be charged to individual consumers of water during the said period of thirty years, and that in pursuance of said ordinance it completed and put in operation a system of water-works, and was ready and willing to furnish the appellee with water at the rate fixed by the said ordinance of the said village of Rogers Park, and that it was not legally required to accept the rates fixed by the ordinance of the city of Chicago, the maximum rates fixed by the city of Chicago being lower than the maximum rates fixed by the ordinance of the said village for the same service.     After a trial the court entered a judgment awarding a peremptory writ as prayed by the appellee, from which judgment this appeal is prosecuted.

The appellant corporation voluntarily sought corporate existence in order to enable it to engage in an enterprise essentially public in its character, in the prosecution of which it would be necessary the property of the corporation should be devoted to a use in which the public had an interest.  For the accommodation of the business it designed to pursue it was necessary it should secure, and it did secure, a special privilege to occupy the streets, alleys and public places of the village of Rogers Park. This license was granted because it was engaged in a business of extreme necessity to the inhabitants of the village.  It is not a private but a *quasi* public corporation, and is subject to be controlled by the public with relation to the rates to be exacted for the commodity it was created to supply to the public.  Power is possessed

by the State to prevent extortion by such *quasi* public corporations, and to restrict them to the exaction of reasonable rates and charges. (*Munn* v. *People*, 69 Ill. 80; *Ruggles* v. *People*, 91 id. 256; *Munn* v. *People*, 94 U. S. 113; *Spring Valley Water-Works* v. *Schotten*, 110 id. 347; Beach on Public Corp. secs. 2, 3; *Hanger* v. *Water Co.* 28 Pac. Rep. 244; Tiedeman on Limitation of Police Power, sec. 93.)   We do not understand counsel for appellant antagonize this as the true view of the law.   But the position of the appellant company seems to be, the alleged ordinance of the village of Rogers Park was a proposition on the part of the village to it to construct and maintain a system of water-works in the village for a period of thirty years, and that to induce it to accept such proposition and provide a supply of water for the village and its inhabitants the rates to be paid by the village and by the inhabitants thereof for water during that period were fixed and prescribed by the terms and conditions of the ordinance; that it accepted said ordinance in view of the prices and rates so fixed, and having constructed the system of water-works in accordance with the provisions of the ordinance, and having in all other respects complied with its terms, the ordinance, the acceptance thereof and fulfillment by it of all things required to be done upon its part constituted a binding, irrevocable contract.

The ordinance of the city of Chicago requires the appellant company shall accept the same scale of prices for the water supplied to the inhabitants of that part of the said city which was formerly embraced within the limits of the village of Rogers Park as is paid by the consumers of water in other portions of the city.   This scale of prices is lower than the rates fixed by the alleged ordinance of the village of Rogers Park.   The argument of counsel for the appellant company is, that the provisions in the alleged ordinance of the village of Rogers Park fixing the rates to be charged by it for water, and its acceptance of the said ordinance and compliance therewith, constitute

a property right of the appellant company and an irrevocable contract right, and that the ordinance of the city of Chicago contravenes section 2 of article 2 of the constitution of 1870, which provides no one shall be deprived of property without due process of law, and also is in violation of section 14 of the same article of the constitution, which prohibits the enactment of any law impairing the obligation of a contract, and that for these reasons said ordinance of the city of Chicago is void.

We do not think the adoption of the alleged ordinance by the village of Rogers Park and the acceptance and fulfillment of the conditions thereof by the appellant company vested it, as with a property right, with the power to demand that the rates named in the ordinance should remain fixed and unchanged for the period in which it was licensed to occupy the streets of the village, or that the ordinance and its acceptance constituted a contract, or that any contract obligations arose by reason thereof. The appellant company stood charged with a legal duty to supply water to the inhabitants of the village for a reasonable compensation. It received corporate existence in order to enable it to discharge that duty, and the State possessed ample power to enforce the performance of that duty. The power possessed by the State to enforce the duty might be properly exercised by establishing a scale of rates and prices to be demanded by the company from the inhabitants of the village, and this power, and that mode of exercising it, were delegated by the State to the village by section 1, article 10, chapter 24 of our statutes. (Starr & Curtis' Stat. 1896, p. 785.) The village exercised the power by incorporating in the ordinance a scale of prices as being just and reasonable maximum rates to be paid to the company by the consumer of water. This provision of the ordinance had no effect to establish a contract between the appellant company and the village that the individual inhabitants of the village should and would pay such rates for the pe-

riod of thirty years, or any fixed period of time, but was simply a declaration on the part of the village that such rates were reasonable. The legal effect was to establish, *prima facie*, the corporation, in order to discharge the duty it owed to the public, must supply the commodity it had been created to supply at the prices named in the ordinance. It was a mode of regulating and enforcing the discharge of a legal duty—not a proposition looking toward a contract. No contract was necessary to create an obligation on the part of the corporation to supply water at a reasonable rate, for that rested upon it as a duty.

Nor did the fixing of rates by the alleged ordinance of the village of Rogers Park vest in the appellant company an irrevocable right to exact such rates for the period it had been granted permission to occupy the streets, alleys and public places of the village, or for any fixed period. A rate or price reasonable and just when fixed may, in the future, become so unreasonably high that the exaction of such rate or price is but an extortion. The duty of the corporation does not, however, change, but remains the same,—that is, to exact only reasonable compensation. The power of the State to enforce that duty is not exhausted by its exercise in the first or any subsequent instance, but is continuous, and may be exerted from time to time, whenever necessary to prevent extortion by the agency created by the State to serve the public. Whenever the evil of extortion exists the power to eradicate it may be successfully invoked. In the exercise of that power by the State, or by a municipality exercising the power by delegation from the State, there is no admixture whatever of any contractual element, nor does the corporation against whom the power is exercised obtain any vested property interest or property right in the scale of rates deemed at any particular time to be reasonable maximum prices for the article to be supplied by the corporation. The annexation of the village of Rogers Park to the city of Chicago

operated to clothe the city council of the city with ample authority to determine, *prima facie*, whether the rates demanded by the appellant company for water supplied to the inhabitants of that part of the city which was formerly within the limits of the village were reasonable, and to enact an ordinance reducing such rates if deemed by the council to be extortionate.

It is suggested the members of the city council are elected by the people and are agents of the people, and that the action of the council in fixing the prices to be paid for water is, in effect, that of those who are to purchase water, and is therefore violative of the general principle no man shall be a judge of his own case. If there is any force in this view it is destructive of the doctrine, in its entirety, that the State is possessed of power to restrict, within reasonable limits, the charges of *quasi* public corporations, for the State acts through the members of the General Assembly, who are the agents and representatives of those who are to be benefited by such restrictions. The suggestions omit from consideration the controlling fact that *quasi* public corporations are created by the State for the good of the public,—to serve the public,—and that they accept corporate life subject to the power retained by their creator to regulate and control them for the public good. The General Assembly is the legislative department of the State, and the city council is the governing board, and in a sense the legislative department, of the city. The members of each of those bodies act in their official capacity, and are bound, in morals and in law, to act honestly, conscientiously and impartially, and with due regard for the rights and interests of all who may be affected by their official determination. The best interests of the public will not be subserved by denying fair and reasonable profits and gain for services to be rendered by *quasi* public corporations to the people, for the reason that if insufficiently remunerated such corporations cannot exist.

The public good, therefore, demands unselfish, conscientious and patriotic treatment of the question at the hands of those entrusted with the duty and power to consider and determine as to the interests of the people and of the corporations, which, properly viewed and judged, are and should be mutual.  It is not to be assumed a duty so obvious will be willfully disregarded, and that narrow and selfish considerations will prevail and control such representative bodies.  Nor are the corporations left without remedy against unwarranted and unjustifiable acts of the municipal council.  If the scale of rates established by a city council is deemed by the corporation to be unreasonably low and unjust, it is expressly provided the action of the council may be reviewed and determined by the courts on application of the corporation. Starr & Curtis' Stat. 1896, chap. 24, par. 458, p. 868.

The contention here is not that the rates fixed by the city council of Chicago are so low as to be oppressive, but that the rates fixed by the ordinance of the village are unalterable for a period of thirty years.  That contention cannot be maintained.  Appellee, on May 17, 1897, signed an application to the appellant company to be supplied with water, "subject to the rules and regulations of the company now in force or hereafter to be enacted or adopted, which rules and regulations are hereby made and declared to be part of the contract between me (appellee) and the said company for supplying said premises with water."  The application was accepted and appellee received water thereunder, and paid the rates fixed by the ordinance of the village, and the rules of the company framed thereunder, until December 11, 1897.  On October 18, 1897, the city council of the city of Chicago adopted the ordinance reducing the rates, and on December 11, 1897, appellee tendered payment for a future supply of water according to such reduced rates, which being refused, he filed this petition to require the appellant company to submit to the provisions of the ordinance of

the city as to the amount to be paid by him. There is no force in the insistence his application and its acceptance constituted a contract on his part to pay indefinitely, or during the period of thirty years, at the rate fixed by the rules and regulations of the company framed under the ordinance of the village. It but bound him to pay such rates only so long as the appellant had lawful right to demand and receive the prices fixed by the ordinance of the village. The rules and regulations in force referred to in the application became inoperative by force of law as to the rate to be paid when a new scale of rates was established by the ordinance of the city.

The view we have taken of the question here involved rendered it unnecessary we should determine the contention of the appellee that the alleged ordinance of the village, set out in the pleading by the appellant company, had not been legally adopted by the board of trustees of the village.

The judgment is affirmed.

*Judgment affirmed.*